# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Bartlit Beck LLP,

               Petitioner,

     v.

Kazuo Okada,

               Respondent.

Case No. 19-cv-8508

Hon. John F. Kness

## BARTLIT BECK'S MEMORANDUM IN SUPPORT OF
## ITS MOTION TO COMPEL

Kazuo Okada has long refused to pay the $63,369,610.25 he owes Bartlit Beck. He has now thumbed his nose at Bartlit Beck's discovery requests aimed at executing that judgment. Bartlit Beck respectfully requests that the Court order Mr. Okada to respond to Bartlit Beck's outstanding interrogatories and requests for production and to appear for a deposition. Bartlit Beck also requests that the Court award Bartlit Beck the costs and fees it has incurred because of Mr. Okada's failure to adhere to his discovery obligations.

Beginning in July 2021, Bartlit Beck began issuing discovery requests pursuant to Federal Rule 69(a)(2) to facilitate Bartlit Beck's collection efforts.[1]

---

[1] To date, over two years after the arbitral award against him, Bartlit Beck has only been able to collect $392,377.31 of the judgment—less than 0.7% of the total amount he owes.

Specifically, Bartlit Beck issued two narrowly tailored sets of interrogatories and requests for production. Mr. Okada's responses to the first set are woefully insufficient. Mr. Okada has not responded at all to the second set, the responses to which are now 42 days overdue. In addition to failing to respond to written discovery, Mr. Okada has refused to appear for his deposition, despite months of correspondence regarding the deposition between Bartlit Beck and Mr. Okada's former lawyers at Dentons.

Faced with Mr. Okada's stalwart refusal to participate in discovery, Bartlit Beck requests the Court's assistance in compelling Mr. Okada to respond to its discovery requests so that Bartlit Beck can recover the ~$63 million Mr. Okada owes the firm. Further, due to Mr. Okada's delays and evasions, Bartlit Beck has incurred significant attorneys' fees and out-of-pocket costs, including those associated with bringing this motion. Bartlit Beck respectfully requests that the Court order Mr. Okada to pay Bartlit Beck those fees and costs.

## I.    MR. OKADA'S CONSISTENT REFUSAL TO RESPOND TO DISCOVERY REQUESTS

### A.    Mr. Okada's Deficient Responses to Interrogatories and Requests for Production

On July 21, 2021—over four months after the Court entered judgment in this matter and with virtually the entire amount of the judgment outstanding—Bartlit Beck issued 22 interrogatories and 9 requests for production, which were narrowly tailored to establish the location and value of Mr. Okada's assets. *See*, *e.g.*, Ex. A, First Set of Interrogatories (July 21, 2021) at Rog Nos. 1-3, 5 (requesting bank

account information and the value of real property owned by Okada) Ex. B, First Set of RFPs (July 21, 2021) at Req. Nos. 5-7 (seeking tax returns).

Following two extensions, Mr. Okada served written responses and a document production on October 5, 2021.[2] Both were deficient. In a letter dated November 17, 2021, Bartlit Beck outlined four specific deficiencies. *See* Ex. C, Ltr. fr. J. Ackerman (Nov. 17, 2021). <u>First</u>, Mr. Okada failed to state, as required by Fed. R. Civ. P. 34(b)(2)(C), whether he is withholding documents or other information based on his numerous (and spurious) objections. *See id.* at 1. Thus, the full extent to which Mr. Okada has or has not satisfied his obligations in responding to the requests remains unclear. <u>Second</u>, in response to Request for Production No. 2, which seeks Mr. Okada's bank statements, Mr. Okada stated that he was "working to gather the twelve most recent statements for his Japanese Bank Accounts and will produce them upon receipt." *Id.* Mr. Okada never produced the statements. <u>Third</u>, regarding Request for Production No. 8, Bartlit Beck asked Mr. Okada to confirm that he does not have any Aruze Hong Kong financial statements in his possession other than the two he produced. *See id.* <u>Fourth</u>, Bartlit Beck sought a response to its Interrogatory No. 8, which requested an itemization of Mr. Okada's personal property. *See id.* at 2. Although Bartlit Beck agreed to narrow the scope of

---

[2] To avoid publicly filing Mr. Okada's financial information, Bartlit Beck has not attached Mr. Okada's responses to its first set of discovery requests. As detailed herein, however, only a subset of Mr. Okada's responses to the first set of discovery requests are the focus of this motion and those are identified in Exhibit C. Should the Court wish to review Mr. Okada's complete responses to the Bartlit Beck's first set of requests, Bartlit Beck is prepared to provide them.

the interrogatory to items worth more than $20,000 (*see id*.), Mr. Okada has not provided any substantive response to the interrogatory. Mr. Okada never responded to this letter and the requests identified therein remain outstanding.

The same day Bartlit Beck sent that letter, it served a second set of interrogatories and requests for production. Specifically, Bartlit Beck served five additional interrogatories (for a total of 27), and four additional requests for production (for a total of 13), which again attempted to identify the location and value of Mr. Okada's assets to aid Bartlit Beck in its execution of the judgment. *See* Ex. D, Second Set of Interrogatories (Nov. 17, 2021) (requesting sources of income, distribution of money, purchases of personal property greater than $10,000, sources of certain deposits, and the current location of specific funds); Ex. E, Second Set of RFPs (Nov. 17, 2021) (requesting documents related to income received, distribution of money received, deposits made into a specified account, and withdrawals made from a specified account). The deadline to respond to these requests was December 17, 2021—the same date Mr. Okada's counsel filed their motion to withdraw. Mr. Okada never responded to these requests.

## B. Mr. Okada Evaded His Deposition

In addition to failing to respond to certain discovery requests, Mr. Okada has refused to sit for a deposition. While waiting for a response to the Citation to Discover Assets that Bartlit Beck attempted to serve in July 2021, Bartlit Beck pursued a deposition of Mr. Okada, which proved to be a futile effort. As detailed in Bartlit Beck's Report on Post-Judgment Discovery, Bartlit Beck made every effort to accommodate Mr. Okada and identify a date that worked for him. *See* Dkt. No. 71 at

4

4; *see also*, *e.g.*, Ex. F, Email fr. J. Ackerman (Aug. 18, 2021) (agreeing "to conduct the examination by video" and further requesting a date for the deposition); Ex. G, Email fr. J. Ackerman (Sept. 15) (same). As of November 17, 2021, however—91 days after Bartlit Beck agreed to conduct Mr. Okada's deposition remotely—Mr. Okada had yet to provide his availability for a deposition. Accordingly, on that date, Bartlit Beck served him with a deposition notice that set the deposition for December 29, 2021, at 4:00 PM CST. *See* Ex. H, Email fr. J. Ackerman attaching Dep. Notice (Nov. 17, 2021).

Mr. Okada did not appear for the deposition. Instead, roughly 24 hours before the deposition was scheduled to begin, Mr. Okada's Dentons lawyers informed Bartlit Beck— for the first time in approximately four months of corresponding about the deposition—that "Mr. Okada does not plan to attend the deposition," further stating that "[w]e cannot represent him in this deposition either, as explained in the motion to withdraw and reply." Ex. I, Email fr. A. Gude (Dec. 28, 2021). While Mr. Okada's Dentons lawyers had a pending motion to withdraw before the Court (which the Court subsequently granted), they had nonetheless assured the Court that "Mr. Okada has been provided with copies" of the deposition notice and "is aware of all deadlines relating to the same." Mot. for Leave to Withdraw (Dkt. No. 67) ¶¶ 6-7. Neither Mr. Okada nor his now-former Dentons lawyers provided any explanation for Mr. Okada's failure to appear at his deposition, nor made any effort to reschedule the deposition.

5

## II.    THE COURT SHOULD COMPEL MR. OKADA TO COMPLY WITH HIS DISCOVERY OBLIGATIONS

Mr. Okada should not be permitted to run from both Bartlit Beck's judgment and his discovery obligations. As one court in this district put it, "[n]o litigant has the right . . . to evade answering discovery in a straightforward and responsive way. Quite the contrary; all parties are equally obligated to participate fairly and cooperatively in discovery." *Jackson v. N'Genuity*, 2011 WL 1134302, *1 (N.D. Ill. Mar. 28, 2011).

Indeed, courts in this circuit do not take intentional discovery violations lightly. In *Harrington v. City of Chicago*, the Seventh Circuit affirmed the dismissal of a case because counsel and his clients "missed several deposition dates without explanation," failed to "respond[] or otherwise participt[e] in discovery," and demonstrated "repeated lapses during discovery." 433 F.3d 542, 545, 548 (7th Cir. 2006). The Seventh Circuit in *Newman v. Metropolitan Pier & Exposition Authority* did the same. *See* 962 F.2d 589, 591 (7th Cir. 1992) ("A plaintiff's failure to comply with discovery orders is properly sanctioned by dismissal, a defendant's by entry of a default judgment."); *see also Hal Commodity Cycles Mgmt. Co. v. Kirsh*, 825 F.2d 1136, 1139 (7th Cir. 1987) (affirming entry of default judgment due to intentional discovery abuses and stating "[l]itigation is not a contest to see how much trouble you can cause your opponents").

Similarly, in *Johnson v. J.B. Hunt Transport, Inc.*, the Seventh Circuit affirmed the award of sanctions due to the "pattern of dilatory conduct" by the defendant, wherein the defendant "failed to respond to written discovery in a timely

6

manner and relied on the absence of those responses as a basis to delay []
depositions[.]" 280 F.3d 1125, 1132 (7th Cir. 2002) (noting that defendant "refused
to even discuss resolving the outstanding discovery issues with opposing counsel,
choosing instead to let the court decide it"); *see also Jackson*, 2011 WL 1134302 at
*1 (granting motion to compel and drawing adverse inferences because "defendants
have utterly failed to comply with their discovery obligations").

Here, Mr. Okada offers no excuse for his refusal to respond to outstanding
post-judgment discovery requests. He never responded to Bartlit Beck's letter
regarding his incomplete responses to the first set of discovery requests—even
though that letter offered to narrow one such request. *See* Ex. C, Ltr. fr. J.
Ackerman (Nov. 17, 2021) at 2. He never responded to Bartlit Beck's second set of
discovery requests even though the response deadline passed over one month ago.
And Mr. Okada failed to appear for his December deposition, again, without
explanation. As this Court recognizes, however, "[d]epositions are one of the most
valuable tools in discovery" and they should not be "impeded by the unacceptable
conduct of witnesses and counsel." J. Kness Case Procedures, "Depositions,"
https://www.ilnd.uscourts.gov/judge-info.aspx?Iu9/vqz23r5X7AkWx/nLtg== (last
visited Jan. 28, 2022).

Unlike some of the cases cited above, dismissal or adverse inferences will not
cure the harm caused to Bartlit Beck by Mr. Okada's obstruction—this Court
already entered judgment against Mr. Okada. And Bartlit Beck has expended
extensive time and resources in an effort to execute that judgment. Yet in the ten

7

months since the Court entered the judgment, over $62 million of the over $63 million judgment remains outstanding. Accordingly, in aid of execution of that judgment, Bartlit Beck sought discovery. Mr. Okada's intentional frustrations of the discovery process, however, are but one more effort to delay paying the $63 million judgment against him. That delay must end—and it starts with an order from this Court, pursuant to its authority under Federal Rule of Civil Procedure 69(a)(2), ordering Mr. Okada to comply with post-judgment discovery requests.

## III. THE COURT SHOULD ORDER MR. OKADA TO PAY THE COSTS AND FEES ASSOCIATED WITH THIS MOTION

Bartlit Beck should not have to bear the costs and fees associated with its effort to execute the ~$63 million already owed to it. Indeed, the Federal Rules establish safeguards to prevent that from happening. Pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), the Court "***must*** . . . require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," if the motion is successful. Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).

That automatic award is subject to three exceptions, none of which apply here. First, Bartlit Beck did "attempt[] in good faith to obtain the disclosure or discovery without court action." Fed. R. Civ. P. 37(a)(5)(A)(i). As detailed in Section I herein, in Bartlit Beck's Report on Post-Judgment Discovery, and in the Motion to Compel filed concurrently herewith, Bartlit Beck repeatedly reached out to Mr. Okada's counsel at Dentons in an effort to resolve this discovery dispute. Before withdrawing as counsel, Dentons also assured the Court that Mr. Okada was aware

of all upcoming discovery deadlines. *See* Mot. for Leave to Withdraw (Dkt. No. 67) ¶¶ 6-7. But to date, Mr. Okada remains silent in response to Bartlit Beck's post-judgment discovery requests, leaving Bartlit Beck with no option but to file the instant Motion.

Second, Mr. Okada's "response, or objection was [not] substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(ii). "Resistance to discovery is . . . substantially justified if reasonable people could differ as to the appropriateness of the contested action." *Rackemann v. LISNR, Inc.*, 2018 WL 3328140, *3 (S.D. Ind. July 6, 2018) (internal quotations and citation omitted). Here, there is no reasonable dispute as to the appropriateness of the post-judgment discovery sought by Bartlit Beck. Two years after the arbitral award was issued against him, Mr. Okada has yet to pay even *one percent* of the ~$63 million he owes Bartlit Beck. Bartlit Beck thus used the tools at its disposal to try to execute that judgment. Like his response to the judgment, however, Mr. Okada has ignored Bartlit Beck's post-judgment discovery requests. Mr. Okada's "resistance to producing [responses to the post-judgment discovery requests is] not substantially justified[.]" *Id.*

Third, and finally, there are no "other circumstances [that] make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(iii). Indeed, what would be unjust would be to permit Mr. Okada to benefit in any way from his complete disregard of his discovery obligations at the same time that he is attempting to disregard this Court's judgment.

Accordingly, should the Court grant the instant Motion, Federal Rule of Civil Procedure 37(a)(5)'s automatic fee-shifting provision should apply and Mr. Okada should be ordered to pay for the fees and costs incurred by Bartlit Beck associated with bringing this Motion. "Nothing less will make [Bartlit Beck] whole; anything less would defeat the function of Rule 37(a)(4)." *Rickels v. City of South Bend, Ind.*, 33 F.3d 785, 788 (7th Cir. 1994).[3]

## CONCLUSION

Bartlit Beck respectfully requests that the Court order Mr. Okada to: (1) state whether he is withholding documents or other information in response to Bartlit Beck's first set of discovery requests based on any of his objections no later than two weeks after the issuance of the Court's order; (2) respond Requests for Production Nos. 2 and 8 and Interrogatory No. 8 no later than two weeks after the issuance of the Court's order; (3) respond to Bartlit Beck's Second Set of Interrogatories and Requests for Production no later than two weeks after the issuance of the Court's order; (4) be deposed within one month of the issuance of the Court's order; and (5) pay Bartlit Beck the fees and costs incurred in connection with the instant Motion within one month of the issuance of the Court's order. Bartlit Beck further requests whatever other relief the Court deems appropriate.

---

[3] Bartlit Beck is prepared to submit an itemization of the specific fees to be reimbursed within seven days of the Court's order.

January 28, 2022                          Respectfully submitted,

                                          /s/ *Sean M. Berkowitz*
                                          Sean M. Berkowitz (IL Bar No. 6209701)
                                          LATHAM & WATKINS LLP
                                          330 N. Wabash, Suite 2800
                                          Chicago, IL 60611
                                          Telephone: (312) 876-7700
                                          Facsimile: (312) 993-9767
                                          Sean.berkowitz@lw.com

                                          Adam L. Hoeflich (IL Bar No. 6209163)
                                          Joshua P. Ackerman (IL Bar No. 6317777)
                                          Bartlit Beck LLP
                                          54 W. Hubbard Street Chicago, IL 60654
                                          Telephone:  (312) 494-4400
                                          Adam.hoeflich@bartlitbeck.com
                                          Joshua.ackerman@bartlitbeck.com

                                          *Attorneys for Petitioner Bartlit Beck*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2022, I electronically filed a true and correct copy of Bartlit Beck's Memorandum In Support Of Its Motion To Compel with the Clerk of Court using the CM/ECF system, and that I sent a true and correct copy of it via FedEx to Respondent Kazuo Okada at the following address:

Kazuo Okada
12-4 Sarugakucho, Shibuya-Ku
Tokyo-to, Japan 150-0033
+81 (704) 342-3881

/s/ *Sean M. Berkowitz*
Sean M. Berkowitz